UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE KOVACH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:21-cv-00013-SEP |
| | ) |
| MFA, INCORPORATED, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendant MFA, Incorporated's Partial Motion to Dismiss Plaintiff's First Amended Petition.  Doc. [4].  The Motion has been fully briefed.  For the reasons set forth below, the Court will grant the Motion in part.

### FACTS AND BACKGROUND[1]

Plaintiff Stephanie Kovach is a former employee of Defendant MFA, Incorporated from 2014 to 2019.  Plaintiff alleges that, while employed by Defendant, she was repeatedly sexually harassed and was retaliated against for reporting the harassment.  Doc. [10].  Beginning in late 2016, a co-worker, Eric Rudd, started making inappropriate sexual comments at work and sent her vulgar messages via social media. *Id.* ¶ 8.  Rudd then sexually assaulted Plaintiff, which she reported to Defendant's assistant manager Josh Merz within a day of the assault.[2] *Id.* ¶¶ 9-10.  After reporting the assault, Plaintiff alleges that various male coworkers, including Rudd, made derogatory sexual jokes and comments, which Merz did nothing to stop. *Id.* ¶¶ 13, 16-18.  When Plaintiff attempted to stop the unwanted comments, Merz reprimanded her. *Id.* ¶ 17.  Both before

---

[1] The facts contained herein are taken from the allegations set out in Plaintiff's First Amended Petition. Doc. [10].  The Court assumes their truth for the purposes of this Memorandum and Order. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

[2] Plaintiff first reported the alleged sexual assault to the plant manager, who told Plaintiff to instead report it to Merz.  Doc. [10] ¶ 10.

and after the alleged assault, Plaintiff claims, Rudd engaged in inappropriate sexual contact with Plaintiff, including "look[ing] down her shirt" and "slap[ping] her butt at work." *Id.* ¶¶ 14-15.

After reporting the assault, Plaintiff was tasked with more physically demanding job duties and was treated differently than her male co-workers. *Id.* ¶ 22. For example, she had to load and unload trucks and complete paperwork—tasks not typically required of her—while her male co-workers were given extended breaks. *Id.* ¶¶ 22-23. Plaintiff continued reporting the harassment over the next couple months, but Defendant took no action. *Id.* ¶¶ 23-29.

In January 2019, after reporting to her union representative Defendant's inaction with respect to Rudd's initial Facebook messages, the sexual assault, and the derogatory comments and jokes by her male co-workers, Defendant's Vice President of Corporate Services, Amanda Cooper, visited the work site to talk to Plaintiff and several employees. *Id.* ¶¶ 45-46. Later that month Cooper informed Plaintiff that Defendant had conducted an investigation that had neither proved nor disproved Plaintiff's allegations. *Id.* ¶ 48. Plaintiff was terminated on August 27, 2019. *Id.* ¶ 49. She asserts that her termination was retaliation for continuing to "make an issue" of her sexual assault and treatment at work, and that the reasons Defendant provided for her termination were "regular behaviors" of her male co-workers. *Id.* ¶¶ 50-51.

Plaintiff filed a Charge of Discrimination with the Missouri Human Rights Commission on October 9, 2019. *See* Docs. [4-1], [18] at 2. Her First Amended Petition included four counts, but Plaintiff voluntarily dismissed two counts brought under the Family and Medical Leave Act. *See* Docs. [10], [21], [33], [34]. The remaining counts both arise under the Missouri Human Rights Act (MHRA): (I) Sexual Harassment and Hostile Work Environment, and (II) Retaliation. Doc. [10] at 10, 12. Defendant filed a Partial Motion to Dismiss Plaintiff's First Amended Petition on February 26, 2021, claiming Plaintiff failed to exhaust her administrative remedies. Doc. [4].

## LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations to be true and makes all reasonable inferences in favor of the nonmoving party. *See Neitzke,* 490 U.S. at 326-27.

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a

motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Specifically, the complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.,* 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The Court "need not accept as true plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly,* 550 U.S. at 556.

## DISCUSSION

To bring an action under the MHRA, a plaintiff must first exhaust her administrative remedies by filing a Charge of Discrimination with the Missouri Human Rights Counsel (MHRC) within 180 days of the alleged discriminatory act. Mo. Rev. Stat. § 213.075.1; *see Wiedner v. Ferrellgas, Inc.*, 607 S.W.3d 231, 239 (Mo. Ct. App. 2020). Failure to timely file a charge of discrimination is a "complete defense," requiring dismissal of the allegations related to that charge. Mo. Rev. Stat. § 213.075.1; *see Gillespie v. Charter Commc'ns*, 31 F. Supp. 3d 1030, 1033 (E.D. Mo. 2014) (citing *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007)). "Any act of discrimination occurring outside this 180-day period is considered 'merely an unfortunate event in history which has no present legal consequences.'" *Pollock v. Wetterau Food Distrib. Grp.*, 11 S.W.3d 754, 763 (Mo. Ct. App. 1999) (quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 557 (1977)).

The MHRA's 180-day statute of limitations is subject to equitable exceptions, including the continuing violation doctrine. *Gillespie*, 31 F. Supp. 3d. at 1033 (citing *Rowe v. Hussmann Corp.*, 381 F.3d 775, 782 (8th Cir. 2004)). A continuing violation is "a series of closely-related, similar events that occurred within the same general time period and stemmed from the same source." *Pollock*, 11 S.W.3d at 763. The doctrine recognizes that some claims "cannot be said to occur on any particular day," but "occur over a series of days or perhaps years." *Giandinoto v. Chemir Analytical Servs., Inc.*, 545 F. Supp. 2d 952, 957 (E.D. Mo. 2007) (quoting *Jensen v. Henderson*, 315 F.3d 854, 859 (8th Cir. 2002)). The continuing violation doctrine permits a

3

plaintiff to recover for a discriminatory act occurring prior to the 180-day filing period if the plaintiff can demonstrate that "the act is part of an ongoing practice or pattern of discrimination by her employer." *See Muhammad v. City of St. Louis*, 2019 WL 4576885, at *2 (E.D. Mo. Sept. 20, 2019) (quoting *Plengemeier v. Thermadyne Indus., Inc.*, 409 S.W.3d 395, 401 (Mo. Ct. App. 2013)).

To successfully plead a continuing violation, a plaintiff must satisfy a two-part test. *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 252 (Mo. Ct. App. 2012). The plaintiff must first "demonstrate that at least one act occurred within the filing period" and, second, must "show that the current claim of discrimination is part of 'a series of interrelated events, rather than isolated or sporadic acts of intentional discrimination.'" *Id.* (quoting *Pollock*, 11 S.W.3d at 763). Courts applying the test look for "'day-to-day' discriminatory events that occur on a regular basis, which . . . may not be significant individually but establish a continuing violation due to their cumulative effect." *Id.* (citing *Pollock*, 11 S.W.3d at 763). If the plaintiff satisfies both parts of the test, "the 180-day filing period becomes irrelevant" and she "may then offer evidence of the entire continuing violation." *Muhammad*, 2019 WL 4576885, at *2 (quoting *Tisch*, 368 S.W.3d at 252). Continuing violations are most commonly found when plaintiffs assert hostile work environment claims, which involve repeated conduct and cannot be pinpointed to a precise moment. *See Cooper v. KSHB-TV 41*, No. 17-0041-CV-W-BP, 2018 WL 8131234, at *4 (W.D. Mo. Apr. 2, 2018) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)); *see also Tisch*, 368 S.W.3d at 254 (quoting *Morgan*, 536 U.S. at 115).

An isolated event, even one with continuing impact, does not constitute a continuing violation. *Herrero v. St. Louis Univ. Hosp.*, 109 F.3d 481, 486 (8th Cir. 1997) (citation omitted). "Discrete acts," occurring at a particular moment in time, are not actionable if time barred, even when they relate to acts alleged in timely filed charges. *Tisch*, 368 S.W.3d at 253-54 (quoting *Morgan*, 536 U.S. at 110, 113-14); *see also Frey v. Fed. Rsrv. Bank of St. Louis*, 2015 WL 4526963, at *3 (E.D. Mo. July 27, 2015) (citation omitted). Prior acts may nevertheless be used as background evidence in support of timely claims. *Tisch*, 368 S.W.3d at 254 (citing Morgan, 536 U.S. at 113); *see also Williams v. Lender Processing Servs., Inc.*, 2013 WL 5739059, at *1 (E.D. Mo. Oct. 22, 2013) (citation omitted). Following federal law, Missouri courts apply equitable doctrines "sparingly" in determining whether a Charge of Discrimination was timely filed. *Tisch*, 368 S.W.3d at 252 (quoting *Morgan*, 536 U.S. at 113).

4

Plaintiff filed her Charge of Discrimination with the MHRC on October 9, 2019, Doc. [4-1], and has thus exhausted her administrative remedies for discriminatory acts that occurred after April 12, 2019.  Defendant moves to dismiss all allegations occurring prior to April 12, 2019, for failure to exhaust, and claims that Plaintiff's First Amended Petition does not allege any actions—other than her termination—that occurred within the 180-day filing period.  Doc. [4] ¶ 11.  In response, Plaintiff invokes the continuing violation doctrine, arguing that Defendant's alleged discriminatory and retaliatory actions continued until her termination.  *See* Doc. [18] at 2-7.

## I.  Plaintiff establishes that at least one act occurred within the filing period.

To establish a continuing violation, a plaintiff must first demonstrate that at least one discriminatory act occurred within the 180-day filing period.  *Rowe*, 381 F.3d at 782.  Defendant is correct that the First Amended Petition, which is largely devoid of temporal references, does not allege that the discriminatory acts described continued into the 180-day filing period.  However, Plaintiff's Charge of Discrimination alleges that "[t]he treatment I have outlined above continued until the time of my termination."[3]  Doc. [4-1] at 1.  That "treatment" included the sexual assault in 2016, sexual harassment, derogatory jokes and comments following her report of the assault, a change in job duties, and difficulty reporting her experiences to management.  *Id.*  The Court interprets Plaintiff's MHRC filing liberally, *see Reed v. McDonald's Corp.*, 363 S.W.3d 134, 143 (Mo. Ct. App. 2012), and finds that Plaintiff sufficiently alleges that discriminatory activity occurred within the 180-day filing period.  *See Plengemeier*, 409 S.W.3d at 401 (plaintiff sufficiently pleaded discriminatory conduct within the filing period by alleging that it "continued through" the filing period).

## II.  Some of Plaintiff's allegations qualify as continuing violations.

In order for her claims that originated before the filing period to survive the Motion to Dismiss, Plaintiff must establish that they qualify as continuing violations.  *Rowe*, 381 F.3d at 782.  Discriminatory acts span a spectrum from discrete acts, which are "events that can be

---

[3] The Court properly considers the Charge of Discrimination because it is "incorporated by reference" into the pleadings, *Dittmer Props., LP v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (quotation omitted), and it is a public record, *Faisbich v. Univ. of Minn.*, 304 F.3d 797, 802-03 (8th Cir. 2002) (citation omitted) (concluding that "an EEOC charge is part of the public record").  *See also Rutledge v. ISG Tech., LLC*, 2018 WL 1121507, at *1 (E.D. Mo. Mar. 1, 2018) (discussing plaintiff's MHRC form); Doc. [10] ¶ 2 (referencing the Charge of Discrimination).

5

identified individually as significant events," *Tisch*, 368 S.W.3d at 253 (internal quotation marks and citation omitted), to continuing violations, which "consist of repeated conduct extending over a period of time," *id.* at 254 (quoting *Morgan*, 536 U.S. at 115). Discrete acts preceding the filing period are not actionable, regardless of their relation to acts in timely filed charges. *Morgan*, 536 U.S. at 113.[4]

Defendant argues that Plaintiff has alleged discrete acts because they do not constitute a "series of similar events within the same general time period." Doc. [5] at 6. Plaintiff responds that many of her claims should survive Defendant's Motion because they qualify as continuing violations, including the 2016 assault, the verbal harassment and differential treatment she suffered thereafter, and Defendant's failure to discipline Rudd. Doc. [18] at 4-5. The Court finds that Plaintiff successfully pleads continuous violations in the form of verbal harassment and differential treatment with respect to work assignments and breaks, but that her claims based on the 2016 assault and Defendant's failure to discipline the alleged perpetrator must be dismissed as untimely.

Construing Plaintiff's Amended Petition and MHRC Charge of Discrimination liberally, she successfully alleges a continuing violation for sexual harassment based upon repeated inappropriate sexual comments and jokes by her co-workers. *See, e.g.*, Docs. [10] ¶¶ 13, 16-21; [4-1] at 1. Courts have recognized that repeated verbal harassment constitutes a continuing violation under the MHRA. *See, e.g.*, *Rowe*, 381 F.3d at 781. Further, Plaintiff alleges that the verbal harassment was from the "same harasser . . . committing the same harassing acts." *Id.* Because Plaintiff alleges that this discrimination continued until her termination, Doc. [4-1], she sufficiently alleges a continuing violation.

Likewise, Plaintiff's First Amended Petition alleges continuing violations with respect to how she was treated at work. Specifically, Plaintiff submits she received more physically demanding job duties and was "treated differently than male employees when given work assignments" after reporting the assault and harassment. Doc. [10] ¶ 22. Those changes constitute continuing violations, she argues, because there was "no end date for the change in her duties." Doc. [18] at 4. Similarly, she notes that "the different treatment to Plaintiff during work breaks . . . also does not have a stated end date." *Id.*

---

[4] Courts look to "both Missouri law and any federal employment discrimination (i.e., Title VII) case law that is consistent with Missouri law." *Tisch*, 368 S.W.3d at 252 n.4.

6

Drawing all reasonable inferences in Plaintiff's favor, her allegation that the changes in how she was treated "continued until the time of [her] termination" is sufficient to support her claim that those changes constituted continuing violations. Doc. [4-1] at 1; *see Neitzke,* 490 U.S. at 326-27. Plaintiff does not allege "isolated" or "sporadic" asymmetries in how she was treated relative to her male co-workers. *Tisch*, 368 S.W.3d at 252 (quoting *Pollock*, 11 S.W.3d at 763). Rather, Plaintiff submits that she was treated differently "regularly," Doc. 10 ¶ 22, with the series of repeated discriminatory acts beginning after her reporting of the assault and continuing "until the time of [her] termination." Doc. [4-1] at 1. Each demand that she perform a more difficult task or take a shorter break may have been isolated in a sense, but her claims that the differential treatment occurred regularly until her termination makes those individual acts "part of a series of closely-related, similar events." *Id.* Therefore, Plaintiff has successfully alleged continuing violations in the form of more onerous work assignments and less generous breaks than her male colleagues.

The alleged 2016 sexual assault, by contrast, is not part of a continuing violation because it can be "identified individually as [a] significant event." *Tisch*, 368 S.W.3d at 253 (quotation marks and citation omitted); *cf. Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (applying *Morgan* and finding assault of a prisoner not subject to continuing violation doctrine). Plaintiff does not allege any similar or repeated conduct. *Compare Rowe*, 381 F.3d 781 (repeated assaults along with inappropriate sexual comments constituted continuing violation), *with Nygren v. Ashcroft*, 109 F. App'x 816, 819 (8th Cir. 2004) (events following a single assault, including comments from the assaulter and employer's inadequate response, did not form part of a "single, actionable hostile work environment"). Therefore, Plaintiff did not timely file her Petition with respect to the 2016 assault, and all claims arising from that assault are dismissed for failure to exhaust.

Finally, Plaintiff alleges that Defendant's failure to discipline Rudd and forcing her to work near him constitutes a continuing violation because "the lack of action by Defendant has no end." Doc. [18] at 4. As discussed above, to properly plead a continuing violation, Plaintiff must "show that the current claim of discrimination is part of 'a series of interrelated events, rather than isolated or sporadic acts of intentional discrimination.'" *Tisch*, 368 S.W.3d at 252 (emphasis added) (quoting *Pollock*, 11 S.W.3d at 763). Plaintiff provides no authority suggesting that continuous inaction untethered to any particular event—never mind a series of

events—can be a continuing violation.[5]  Moreover, to find a continuing violation in such a circumstance would undermine § 213.075.1's 180-day statute of limitations by making it impossible to determine a time at which such a claim expires.

For the foregoing reasons, the alleged sexual assault and failure to discipline Rudd cannot form the basis for Plaintiff's hostile work environment or retaliation claims.  They can, however, be used as background evidence to support her surviving claims.  *See McKinney v. City of Kan. City*, 576 S.W.3d 194, 199 (Mo. Ct. App. 2019) ("Discrete events are not actionable because they occurred outside the statutory time limit, [but] 'prior acts may be used as background evidence in support of a timely claim.'" (citing *Tisch*, 386 S.W.3d at 254)); *see also Morgan*, 536 U.S. at 113.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant MFA, Incorporated's Motion to Dismiss Plaintiff's First Amended Petition (Doc. [4]) is **GRANTED in part** and **DENIED in part**.  The Motion is **GRANTED** to the extent it seeks to dismiss claims arising from Plaintiff's alleged 2016 sexual assault and Defendant's alleged failure to discipline the perpetrator of that assault.  The Motion is **DENIED** as to claims arising from her allegations of verbal harassment and differential treatment with respect to work assignments and breaks.

Dated this 9th day of September, 2021.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

---

[5] To the extent Plaintiff intends to cite Defendant's investigation as a basis for this claim, it does not help because that investigation was completed in late January 2019, more than 180 days before her filing of the Charge of Discrimination in October.  Doc. [10] ¶ 48.